UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS,<br><br>    Plaintiff,<br><br>    v.<br><br>ROMARICO S. MIRANDA, INDIVIDUALLY<br>and d/b/a/ WEDGE BAR & RESTAURANT,<br><br>    Defendants.<br>_____/ | No. C-10-01810 JSW (DMR)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT** |

    Plaintiff J & J Sports Productions, Inc., the exclusive licensor of rights to exhibit certain closed circuit and pay-per-view sports programming, filed suit against Defendant Romarico Salvador Miranda, individually and doing business as Wedge Bar & Restaurant ("Defendant"), alleging Defendant violated federal and state law by intercepting and exhibiting a closed circuit telecast for which Plaintiff had exclusive distribution rights. Plaintiff filed an Application for Default Judgment against Defendant in which Plaintiff seeks statutory damages, damages for conversion, and an award of attorneys' fees and costs. [Docket No. 35.] The Court held a hearing on the Application for Default Judgment on June 30, 2011, at which David Marcolini appeared on behalf of Plaintiff. There was no appearance for Defendant. For the reasons set forth herein, it is recommended that the Court grant Plaintiff's Application for Default and enter default judgment against Defendant in the amount of $7,600.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff J & J Sports Productions, Inc., a distributor of sports and entertainment programming, purchased exclusive nationwide commercial distribution rights to *"The Battle of East and West": Manny Pacquiao v. Ricky Hatton, IBO Lightweight Championship Fight Program* ("the program"). (Compl. ¶ 9.) The program included the main fight between Manny Pacquiao and Ricky Hatton as well as preliminary "undercard" bouts. Using the services of a company called G & G Closed Circuit Events, LLC, Plaintiff entered into sub-licensing agreements with various commercial entities which granted those entities the rights to publicly exhibit the program within their commercial establishments via closed-circuit television. (Compl. ¶ 10; Pl.'s Supplemental Aff. in Supp. of Pl.'s Application for Default J. ("Pl.'s Supplemental Aff.") [Docket No. 39] ¶ 3, May 4, 2011.) The sub-license fee to air the program varied based upon the capacity of the each commercial establishment. (Pl.'s Supplemental Aff. ¶ 8, Ex. 2.)

On May 2, 2009, investigator Jeff Kaplan observed the alleged unlawful exhibition of the program at Wedge Bar & Restaurant in Daly City, California. (Decl. of Affiant Jeff Kaplan ("Kaplan Decl.") [Docket No. 35-3] May 3, 2009.) Kaplan observed an undercard bout displayed on "multiple" televisions, but did not note any evidence of a satellite dish or cable box. *Id*. He paid no cover charge, was not required to make any minimum purchase, and did not notice any advertisements for the program. *Id*. Kaplan observed about 40 persons in Wedge Bar & Restaurant and estimated its capacity at 75+. *Id*. Kaplan also noted the license plates of six vehicles in the parking lot adjacent to the establishment. *Id*. According to Plaintiff, "at no time did [Wedge Bar & Restaurant] lawfully license the [p]rogram." (Pl.'s Supplemental Aff. ¶ 7.) Based upon its capacity, the cost to Defendant for a sub-license of the program would have been $1,600. (Pl.'s Supplemental Aff. ¶ 8.)

On April 27, 2010, Plaintiff filed suit against Defendant, alleging that Defendant unlawfully and willfully intercepted and exhibited the program at Wedge Bar & Restaurant. (Compl. ¶ 12.) In the complaint, Plaintiff alleges federal law claims pursuant to Title 47 U.S.C. §§ 553 and 605 as well as a state law claim of conversion and violation of California Business and Professions Code § 17200 *et seq.*

2

After Defendant failed to respond to Plaintiff's complaint, default was entered on August 5, 2010. [Docket No. 7.] Plaintiff thereafter moved for default judgment. [Docket No. 13.] Plaintiff's Application for Default Judgment was referred to the undersigned for a report and recommendation. The Court held a hearing on the Application for Default Judgment on December 9, 2010, at which attorney James Beck appeared on behalf of Plaintiff. There was no appearance for Defendant. On December 10, 2010, the Court issued a Report and Recommendation recommending that the Court grant Plaintiff's initial Application for Default Judgment and enter default judgment against Defendant in the amount of $9,609.98. [Docket No. 25.]

On December 22, 2010, Plaintiff filed a notice to withdraw its initial Application for Default Judgment. [Docket 26.] In a subsequent filing, Plaintiff explained that after this Court issued its December 10, 2010 Report and Recommendation on the Application for Default Judgment, Plaintiff had determined that its initial service of the complaint on Defendant was invalid, and requested permission to belatedly serve Defendant with the complaint. [Docket No. 31.] The Court granted Plaintiff's request and extended the time for service of the complaint on Defendant. [Docket No. 32.]

On January 10, 2011, Plaintiff served the complaint on Defendant. [Docket No. 29.] After Defendant failed to respond to Plaintiff's complaint, default was entered on February 22, 2011. [Docket No. 34.] On March 26, 2011, Plaintiff filed an Application for Default Judgment. [Docket No. 35 ("renewed Application for Default Judgment").] In its renewed Application for Default Judgment, Plaintiff seeks a judgment granting the following relief: (1) $10,000 in statutory damages for violation of 47 U.S.C. § 605; (2) $100,000 in enhanced damages for violation of 47 U.S.C. § 605; and (3) $1,600 in damages for conversion under California Civil Code section 3336. Plaintiff also seeks an unspecified award of attorneys' fees and costs pursuant to 47 U.S.C. § 605.

As noted by Plaintiff, there have been three actions brought against Defendant for signal piracy of Plaintiff's programming, including one which resulted in a default judgment against Defendant for signal piracy of Plaintiff's programming. (Supplemental Decl. of Thomas P. Riley in Supp. of Pl.'s Application for Default J. ("Suppl. Riley Decl.") [Docket No. 35-4] ¶ 4, Ex. 1, March 26, 2011.) In that case, the investigator paid no cover charge, was not required to make any

3

purchases, did not see any advertisements for Plaintiff's programming, and observed about 37 persons in the establishment. Decl. of Affiant Gary Gravelyn at 2-3, *J & J Sports Prods. v. Miranda* (No. 09-1037) [Docket No. 14-3]. Plaintiff requested $100,000 in statutory and enhanced damages, $1,500 in damages for conversion, and an award of attorneys' fees and costs. The Honorable Susan Illston awarded Plaintiff $1,000 in statutory damages, $1,500 in conversion damages, $847.83 for attorneys' fees, and $1,025 for costs. *J & J Sports Prods., Inc. v. Miranda*, No. 09-1037, 2009 WL 3837273, at *4 (N.D. Cal. Nov. 16, 2009).[1]

## II. ANALYSIS

### A. Jurisdiction and Adequacy of Service of Process

When entry of default is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). In addition, as a preliminary matter, a court must "assess the adequacy of the service of process on the party against whom default judgment is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, *2 (N.D. Cal. Dec. 29, 2000).

Plaintiff's complaint alleges claims under the Cable and Television Consumer Protection Act of 1992, 47 U.S.C. § 553, and the Federal Communications Act of 1934, 47 U.S.C. § 605, as well as a state law claim of conversion and a claim for violation of California Business and Professions Code § 17200 *et seq*. The Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and 47 U.S.C. §§ 553(c)(1) and 605(e)(3)(A). Regarding the state law claims, all of Plaintiff's causes of action are based on the same operative facts such that they are all part of the same case or controversy; therefore, the Court has subject matter jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

---

[1] In the prior case against Defendant, the act of piracy at issue took place on March 15, 2008. The summons and complaint was served on Defendant on May 16, 2009 and the Court granted Plaintiff's motion for default judgment on November 16, 2009. The signal piracy at issue in this matter took place on May 2, 2009, before Defendant had been served in the prior action. The other two actions brought against Defendant are currently pending. The alleged signal piracies at issue in those cases took place on December 6, 2008 and November 14, 2009, respectively, before Defendant had been served in this action. *See* Compl. ¶ 9, *J & J Sports Productions v. Miranda*, No. 10-5504; Compl. ¶ 9, *J & J Sports Productions v. Miranda*, No. 10-5093.

343, 349 (1988). Further, as Defendant Miranda owns and operates Wedge Bar & Restaurant in San Mateo County, located in this District, this Court has personal jurisdiction over Defendant.

Regarding the adequacy of the service of process on Defendant, Rule 4(e)(1) allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under California law, "[a] summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served." Cal. Code Civ. Proc. § 415.10. Alternatively,

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. Proc. § 415.20(b).

Here, the summons and Complaint were served on Defendant Miranda using substitute service on Rebecca Miranda, a co-occupant of Defendant's residence who is at least 18 years of age. [Docket No. 29.] A declaration from a process server indicates that the process server attempted to personally serve Defendant Miranda at his residence on four occasions, but was unsuccessful. *Id*. There is no indication in the record that other reasonable means of service were available. Defendant Miranda is also being sued as the owner of the corporation. Pursuant to Rule 4(h), substitute service on "an officer, managing or general agent" is a valid method for service on a corporation. Fed. R. Civ. P. 4(h)(1)(a). Therefore, the Court concludes that service of process was properly effected.

### B.     Legal Standards for Default Judgment

As noted above, Defendant's default was entered on February 22, 2011. Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment where the Clerk has

previously entered the defendant's default based upon a failure to plead or otherwise defend an action.[2] Fed. R. Civ. P. 55; *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising this discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default, well-pled factual allegations within the complaint are accepted as true. *Pope v. United States*, 323 U.S. 1, 12 (1944); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Necessary facts not contained in the pleadings and claims which are legally insufficient are not established by default. *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992). Allegations relating to the amount of damages are not established in default, and relief is limited to Plaintiff's demand. Fed. R. Civ. P. 54(c); *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

**C.    *Eitel* Analysis**

Plaintiff has alleged Defendant violated two federal statutes, 47 U.S.C. §§ 553 and 605, but in its renewed Application for Default Judgment Plaintiff only seeks damages under section 605. Therefore, the Court will consider the applicability of either or both of the statutes in evaluating the merits of Plaintiff's substantive claims and the sufficiency of the complaint.

The Cable and Television Consumer Protection Act, 47 U.S.C. § 553, prohibits interception or receipt of "any communications service offered over a *cable* system, unless specifically

---

[2] Certain limitations exist on awarding default judgment against an infant, incompetent person, or person in the military. *See* Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 521. Plaintiff has adequately alleged that those circumstances are not present here. (Decl. of Thomas P. Riley in Supp. of Pl.'s Application for Default J. [Docket No. 35-2] ¶ 3.)

authorized." 47 U.S.C. § 553(a)(1) (emphasis added). Upon a showing of a violation of this statute, a court may award actual or statutory damages (at the aggrieved party's election), and may award attorneys' fees and costs. 47 U.S.C. § 553(c)(2). Under section 553(c)(3)(A), damages for violations are set at a minimum of $250 and a maximum of $10,000. In cases where a court finds that the violation was committed "willfully and for the purposes of commercial advantage or private financial gain," the court may enhance the award up to $50,000. 47 U.S.C. § 553(c)(3)(B).

The Federal Communications Act, 47 U.S.C. § 605, prohibits interception or receipt of communication "transmitted by *radio or wire*" without authorization, which has been interpreted to include encrypted satellite cable programming. 47 U.S.C. § 605(a) (emphasis added); *accord J & J Sports Prods., Inc. v. Guzman*, No. 08-5469, 2009 WL 1034218, at *2 (N.D. Cal. April 16, 2009). Upon a showing of a violation of this section, a court may award actual or statutory damages. 47 U.S.C. § 605(e)(3)(B). In contrast to section 553, an award of fees and costs is mandatory under section 605. *Id*. Under section 605(e)(3)(C)(i)(II), damages for each violation are awarded at a minimum of $1,000 and maximum of $10,000. In cases where the court finds that the violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the court may enhance the award up to $100,000. 47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not provided clear direction as to the applicability of these statutes in cases where, as here, the method of interception is not pled, nor has it decided whether or not 47 U.S.C. §§ 553 and 605 overlap. *See Kingvision Pay-Per View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 n.1 (9th Cir. 1999). This lack of precedent, as well as the discretion afforded courts by the statutes, has resulted in divergent outcomes from district courts within the Ninth Circuit. Some courts find overlap between the two statutes and permit recovery under both, while others decline to find conflict between sections 553 and 605 but only permit recovery under one or the other. *Compare J & J Sports Prods., Inc. v. Hernandez*, No. 09-3389, 2010 WL 2650526, at *1 (E.D. Cal. July 1, 2010) (awarding $10,000 total for violating both 47 U.S.C. §§ 553 and 605) *with Kingvision Pay-Per-View v. Backman*, 102 F. Supp. 2d 1196, 1197 n.1 (N.D. Cal. 2000) ("where defendants have *defaulted* and courts have found liability under *both* § 605 and § 553, damages are usually awarded only under § 605" (emphasis in original)). Other courts find the statutes mutually

exclusive and make findings of which is applicable before permitting recovery. *See J & J Sports Prods., Inc. v. Manzano*, No. 08-1872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception"); *J & J Sports Prods., Inc. v. Cardoze*, No. 09-5683, 2010 WL 2757106, at *3 (N.D. Cal. July 9, 2010) ("Plaintiff may not recover under both 47 U.S.C. 605 and 47 U.S.C. 553").

In determining which statute to apply in this action, the Court notes that Plaintiff has not provided any information about the method of interception; in particular, Plaintiff's investigator made no note of either a satellite dish or a cable box. *See* Kaplan Decl.[3] In similar circumstances, courts have declined to award damages under section 605 when there was evidence that the alleged pirate did not have a satellite dish or where there was no proof of satellite interception. *See J & J Sports Prods., Inc. v. Canedo*, No. 09-1488, 2009 WL 4572740, at *4 (N.D. Cal. Dec. 1, 2009); *J & J Sports Prods., Inc. v. Ro*, No. 09-2860, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010); *J & J Sports Prods., Inc. v. Guzman*, No. 09-5124, 2010 WL 4055934, at *2 (N.D. Cal. Oct. 14, 2010). Congressional reports also indicate that section 553 (and not section 605) is appropriate if the signal is intercepted after it has been transmitted through cable even when the origin is via satellite:

> The committee intends the phrase 'service offered over a cable system' to limit the applicability of this section to theft of a service from the point at which it is actually being distributed over a cable system. Thus, situations arising with respect to the reception of services which are transmitted over-the-air (or through another technology), but which are also distributed over a cable system, continue to be subject to resolution under section 605 to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system.

H.R. REP. No. 98-934, at 83; 1984 U.S.C.C.A.N. 4655, 4720. Therefore, the Court concludes that proof of satellite interception is required in order to establish liability under section 605.

Plaintiff argues that its failure to provide information related to the method of interception should not unduly prejudice Plaintiff by preventing it from receiving the higher statutory minimum

---

[3] In the prior case against this Defendant, the investigator specifically noted that there was no satellite dish at Wedge Bar & Restaurant at the time of his investigation. Decl. of Affiant Gary Gravelyn at 2, *J & J Sports Prods. v. Miranda* (No. 09-1037).

and higher maximum enhancement found in section 605; as Plaintiff argues, it is because Defendant has not responded to this action that the method is unknown. However, on a motion for default judgment, a court must rely on the well-pled facts in the plaintiff's submissions to the court. Here, Plaintiff has failed to plead facts sufficient to establish liability under section 605. *See Cripps*, 980 F.2d at 1267. Therefore, the Court will analyze Defendant's liability under 47 U.S.C. § 553.

The Court finds that Plaintiff has adequately stated a claim under section 553. Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Here, Plaintiff alleges that Defendant was not authorized to intercept and exhibit the program, yet did so at Wedge Bar & Restaurant. (Compl. ¶ 12.) The section 553 claim therefore is legally sufficient. Turning to Plaintiff's remaining claims, the Court finds that Plaintiff has adequately stated a claim for conversion. The state law claim of conversion has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rassmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). The complaint alleges facts in support of finding every necessary element: Plaintiff purchased the exclusive licensing rights to the program, Defendant unlawfully exhibited the program, and Plaintiff was deprived of the license fee to which it would have been entitled had Defendant obtained a license from Plaintiff. The complaint also alleges that Defendant violated California Business and Professions Code § 17200 *et seq*. by engaging in unfair trade practices. (Compl. ¶¶ 27-36.) However, in Plaintiff's renewed Application for Default Judgment, Plaintiff did not request relief for this claim, provide any analysis of the claim, or allege facts sufficient to establish that a specific award of damages is legally appropriate. Therefore, this Court will not address alleged unfair business practices. *See Cripps*, 980 F.2d at 1267.

The remainder of the *Eitel* factors favor entering default judgment in favor of Plaintiff. If the Court denies Plaintiff's application for default judgment, Plaintiff will be left without a remedy. *See PepsiCo*, 238 F. Supp. 2d at 1177 (plaintiffs would have no other recourse if default judgment was not granted). There is nothing to suggest that there is a possibility of dispute regarding material

9

1  facts, as Defendant did not file an answer to Plaintiff's complaint. Further, there is no evidence that
2  Defendant's failure to respond was the result of excusable neglect. Plaintiff served not only the
3  summons and complaint upon Defendant, but also the Order Regarding Supplemental Information,
4  Plaintiff's supplemental declaration in support of the renewed application, and the Order Setting
5  Hearing on Plaintiff's Motion for Default Judgment. [Docket Nos. 37 (Order); 40 (Order); and 38,
6  39, & 41 (proofs of service).] Nevertheless, Defendant has not appeared or responded in any
7  manner.

8  Although federal policy does favor a decision on the merits, Federal Rule of Civil Procedure
9  55(b) allows entry of default judgment in situations such as this, where defendant has refused to
10 litigate. Fed. R. Civ. P. 55(b); *see PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer
11 plaintiffs' complaint makes a decision on the merits impractical, if not impossible.").

12 Finally, this case does not involve a large amount of money that might otherwise weigh
13 against entry of default judgment. *See Eitel*, 782 F.2d at 1472 ($3 million judgment at stake
14 considered in light of the parties' dispute as to material facts supported the court's decision not to
15 enter default judgment).

**D.  Damages**

**1.  Statutory Damages**

18 The purpose of permitting Plaintiff to elect either a statutory award or an award of actual
19 damages is to permit recovery even when actual damages are difficult to calculate. *See e.g.*
20 *Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1049 (9th Cir. 1997). When determining the
21 amount of statutory damages to award for signal piracy, courts within the Northern District have
22 taken specific factors into account, including a plaintiff's actual losses or evidence of financial
23 benefit to the defendant. *See J & J Sports Prods., Inc. v. Ho*, No. 10-1883, 2010 WL 3912179, at *1
24 (N.D. Cal. Oct. 5, 2010) ("A traditional method of determining statutory damages is to estimate
25 either the loss incurred by the plaintiff or the profits made by the defendants." (quoting *Joe Hand*
26 *Promotions v. Ho*, No. 09-1435, 2009 WL 3047231, at *1 (N.D. Cal. Sept. 18, 2009)); *see also J & J*
27 *Sports Prods., Inc. v. Montecinos*, No. 09-2604, 2010 WL 144817, at *4 (N.D. Cal. Jan. 11, 2010).
28 Factors to consider include the amount a defendant would have paid for a sub-license, the number of

persons present, whether there was a cover charge, whether there was an increase in food/drink pricing or a minimum purchase requirement, and whether a defendant advertised the plaintiff's programming. *See Ho*, 2009 WL 3047231, at *1; *J & J Sports Prods., Inc. v. Cardoze*, No. 09-4944, 2010 WL 3702836, at *4 (N.D. Cal. Sept. 16, 2010).

Here, Plaintiff's investigator found no cover charge, no advertisements, and no food or drink premiums. Further, Wedge Bar & Restaurant was only about half full of patrons on the night in question. A general inference may be made that in showing the boxing event, Defendant made more money by attracting more customers and selling more food and beverages than it otherwise would have. But Plaintiff has made no specific showing that Defendant profited from the alleged piracy.

Plaintiff urges the court to consider the exhibition itself and not the profit derived when considering the amount of statutory damages to award. (Pl.'s Supplemental Aff. ¶ 14.) According to Plaintiff, the reason signal pirates do not advertise, charge covers, or increase pricing is so that they may go undetected. (Pl.'s Supplemental Aff. ¶¶ 15-17.) However, the contention that pirates operate under a cloak of secrecy somewhat contradicts Plaintiff's assertions that the purpose of the piracy is commercial gain. *See Canedo*, 2009 WL 4572740, at *10. Other than by showcasing cases in other districts that have awarded maximum damages, Plaintiff has not indicated why the facts of this alleged violation are particularly egregious and require the maximum penalty. The Court concludes that Plaintiff has not clearly demonstrated the benefit derived from the piracy. Moreover, Defendant's conduct with respect to the exhibition does not warrant the maximum statutory amount. Therefore, the Court recommends that Plaintiff be awarded $1,000 in statutory damages.

### 2. Enhanced Damages

47 U.S.C. § 553(c)(3)(B) permits an enhancement of the damage award for willful violations committed for commercial advantage. While this section permits an enhancement up to $50,000, the Ninth Circuit has advised that the amount of the award should deter but not destroy. *Lake Alice Bar*, 168 F.3d at 347, 350. Further, "the mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *Backman*, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000); *see also Guzman*, 2009 WL 1034218, at * 3 ("If mere violation of section 553 were *per se* willful, then there would be no difference between statutory damages and any willful enhancement").

11

As the factors considered in determining an award of statutory damages may also evidence intent for commercial advantage, they are also relevant to determining whether an enhanced damages award is appropriate. *Canedo*, 2009 WL 4572740, at *10. In addition, courts regularly enhance damages against repeat offenders in order to deter future offenses. *See Ho*, 2010 WL 3912179, at *2 ($10,000 enhanced damages for third offense where second offense resulted in $5,000 enhancement); *Cardoze*, 2010 WL 3702836, at *4 ($1,000 enhanced damages for second offense); *Kingvision Pay-Per-View v. Guzman*, No. 09-0217, 2009 WL 1475722, at *3 (N.D. Cal. May 27, 2009) ($2,000 enhanced damages for second offense); *Montecinos*, 2010 WL 144817, at *6 ($10,000 enhanced damages for third offense).

As discussed *supra*, Plaintiff has made no showing that Defendant profited from the alleged piracy. However, an award of enhanced damages pursuant to section 553 requires that an interception be committed "willfully" and for "commercial advantage," not commercial gain. Therefore, Defendant's failure to profit from the interception is not dispositive. Further, as noted, there has been one prior default judgment entered against Defendant for signal piracy in the amount of $1,000 in statutory damages, with no enhanced damages. *Miranda*, 2009 WL 3837273, at *1. Plaintiff argues that this prior violation indicates "a deliberate and willful plan" of "persistent theft" on Defendant's part and justifies the maximum enhancement. (Suppl. Riley Decl. ¶¶ 6-7.) As the prior action was commenced and adjudged *after* the instant violation took place,[4] the prior action cannot evidence Defendant's specific knowledge that it was violating the statute. However, it does indicate prior unlawful behavior by Defendant that justifies some enhancement in the damage award. Moreover, given that there is a market for Plaintiff's programming, Defendant's repeated unlawful exhibitions are sufficient to establish its attempt to gain a commercial advantage over its competitors.

The Court recognizes that signal piracy is a pervasive problem that requires penalties to prevent theft and protect the industries that rely on satellite and cable. *See* H.R. REP. No. 98-934 at 83; 1984 U.S.C.C.A.N. 4655, 4720-4722; H.R. REP. No. 100-887 at 28; 1988 U.S.C.C.A.N. 5577,

---

[4] The program at issue in this action was intercepted and shown two weeks before Defendant was served for the prior action.

5657-5658. The Ninth Circuit has also provided some guidance as to the purpose of enhancing a statutory damage award; the enhancement should act as a deterrent on a defendant and help combat the widespread problem of signal piracy. *Lake Alice Bar*, 168 F.3d at 347, 350. However, the importance of a deterrent effect must be balanced with considerations of the harm caused by the violation, and the Ninth Circuit has cautioned lower courts against setting an award so high as to put an establishment out of business. *Id*.

Although Plaintiff requests the maximum possible award of enhanced damages, such an amount is grossly disproportionate to the level of harm. However, because Defendant has previously unlawfully intercepted Plaintiff's programming, the Court concludes the repetition of unlawful behavior requires an enhancement to deter further unlawful conduct. Therefore, this Court recommends the statutory damage award be enhanced by an additional $5,000.

### 3. Conversion Damages

Plaintiff also seeks damages for its conversion claim. According to Plaintiff, the amount that Defendant -- a commercial establishment with a maximum occupancy of 100 -- would have been required to pay for a proper sub-licensing agreement was $1,600. (Pl.'s Supplemental Aff. ¶ 8, Ex. 2.) The amount of damages for conversion is appropriate under California Civil Code section 3336. *See* Cal. Civ. Code § 3336 ("The detriment caused by the wrongful conversion of personal property is presumed to be...[t]he value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted..."). Accordingly, the Court recommends an award of $1,600 for the conversion claim.

### 4. Attorneys' Fees and Costs

Finally, Plaintiff's application for default judgment asserts a right to attorneys' fees and costs under section 605. On May 26, 2011, the Court ordered Plaintiff to submit an accounting sufficient to support an award of reasonable fees and costs for litigating this action by no later than June 10, 2011. [Docket No. 40.] Plaintiff did not do so. Therefore, the Court declines to recommend an award of attorneys' fees and costs.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's Application for Default Judgment be granted. The Court further recommends that Plaintiff be awarded: (1) statutory damages in the amount of $1,000; (2) enhanced damages in the amount of $5,000; and (3) conversion damages in the amount of $1,600.

Any party may file objections to this report and recommendation with the district judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

IT IS SO ORDERED.

Dated: July 11, 2011



DONNA M. RYU
United States Magistrate Judge